1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11

RICHARD J. BAKER,

CASE NO. 09cv982-WQH-CAB

12

Plaintiff,

ORDER

vs.

13
MAJOR LEAGUE BASEBALL
PROPERTIES, INC., MAJOR LEAGUE
14
BASEBALL ENTERPRISES, INC. d/b/a
MAJOR LEAGUE BASEBALL; MAJOR
15
LEAGUE BASEBALL PLAYERS'
ASSOCIATION; SAN DIEGO PADRES
16
BASEBALL CLUB, LP; AND WORLD
BASEBALL CLASSIC, INC.,
17

Defendants.
18

HAYES, Judge:
19

The matters before the Court are the (1) Motion to Dismiss the Second Amended
20
Complaint, or Alternative Motion for a More Definite Statement of Plaintiff's Claims ("Motion
21
to Dismiss"), filed by Defendants Major League Baseball Properties, Inc. ("MLBP"), Major
22
League Baseball Enterprises, Inc., d/b/a Major League Baseball ("MLB"), San Diego Padres
23
Baseball Club, LP ("Padres"), and World Baseball Classic, Inc. ("WBC") (collectively, "MLB
24
Defendants") (Doc. # 98); and the (2) Motion to Dismiss Per FRCP 12(b)(6) or in the
25
Alternative for a More Definite Statement Per FRCP 12(e) ("Motion to Dismiss"), filed by
26
Defendant Major League Baseball Players' Association ("MLBPA") (Doc. # 112).
27

**I.    PROCEDURAL HISTORY**
28

On March 18, 2008, Plaintiff Richard J. Baker filed a Complaint against the MLB

Defendants, the MLBPA, the City of San Diego, Ace Parking, Inc., JMI Sports LLC, American Specialty Insurance & Risk Services, Inc., and ABC Insurance Company in the United States District Court for the Northern District of Florida, alleging diversity jurisdiction. (Doc. # 1). According to the Complaint, "Plaintiff brings this action to recover for personal injuries suffered on March 20, 2006, in a trip and fall accident in a parking lot to PETCO Park stadium (hereinafter, 'PETCO') in San Diego, California." (Doc. # 1, ¶ 1).

On May 23, 2008, Plaintiff filed the First Amended Complaint adding Ballpark Village LLC as a named Defendant. (Doc. # 15).

Between May 24, 2008 and July 30, 2008, Plaintiff voluntarily dismissed Defendants JMI Sports LLC, City of San Diego, American Specialty Insurance & Risk Services, Inc., and Ace Parking, Inc. (Doc. # 17, 18, 30, 34, 59).

In June and July of 2008, each of the remaining Defendants filed motions to dismiss, or, in the alternative, motions for more definite statement. (Doc. # 24-28, 31, 39). On August 12, 2008, the court granted the motions for a more definite statement. (Doc. # 63).

On September 1, 2008, Plaintiff filed the Second Amended Complaint ("SAC"), which named the MLB Defendants and the MLBPA as the sole defendants. (Doc # 66).

On September 15, 2008, the MLB Defendants filed motions to dismiss the SAC or, in the alternative, for a more definite statement. (Doc. # 69-71). On September 22, 2009, the MLBPA filed a motion to dismiss the SAC or, in the alternative, to transfer. (Doc. # 72).

On April 22, 2009, the court granted the MLBPA's motion to transfer venue, and denied all other pending motions "as moot." (Doc. #92 at 7). Pursuant to the court's order, this action was transferred to this Court on April 22, 2009. (Doc. # 93).

On June 26, 2009, the MLB Defendants filed their currently-pending Motion to Dismiss. (Doc. # 98). On July 17, 2009, the MLBPA filed its Motion to Dismiss. (Doc. # 112). On July 26, 2009 and August 9, 2009, Plaintiff filed oppositions to the Motions to Dismiss. (Doc. # 113-114).

## II.    ALLEGATIONS OF THE SAC

On March 20, 2006, Plaintiff was lawfully on the "Campus Parking Lot" while

attending the 2006 "World Baseball Classic Championship," an event sponsored by the MLB Defendants and the MLBPA.  (SAC ¶¶ 1, 19, 29).  The MLB Defendants and the MLBPA "assumed the operation, management, maintenance and control of PETCO, and the surrounding parking lots, for the performance of the World Baseball Classic Championship Finals on March 20, 2006."  (SAC ¶ 20).  The Defendants "set up ... on the premises of PETCO, and surrounding parking lots ... attractions [which] consisted of and were contained in several 'trailer' type buildings set around various parts of the PETCO parking lots, to include the Campus Parking Lot generally to the east of the stadium building."  (SAC ¶¶ 30-31).  "Automobiles were not parked ... in the Campus Parking Lot in order to provide room for the attractions."  (SAC ¶ 31).  The "attractions were naturally set up to visually attract pedestrians and draw them near; obviously this distracted these passersby from looking down to alert themselves of any danger lurking underneath their feet."  (SAC ¶ 33).

"The Campus Parking Lot ... includes [asphalt] ... curbs or 'sidewalks' to the other areas of the lot where motor vehicles would have been parked.  These raised areas–curbs or sidewalks–at the time, were not painted or otherwise marked by some significant visual means to show a raised area of the parking lot."  (SAC ¶ 32).  "No markings, no paint scheme, no warning signs, no warning cones of any type were placed at, near or around the area where the walking surface of the 'curb' or 'sidewalk' fell off some eight to ten inches (8"-10") to the surface normally reserved for the parking of cars."  (SAC ¶ 34).

"On ... March 20, 2006, at approximately 3:00 p.m., [Plaintiff] was walking through the attractions set up by Defendants, when all-of-a-sudden, he stepped out with his left foot and his foot dropped down, completely unexpectedly, eight to ten inches (8"-10") causing [Plaintiff] to fall and land on the parking lot surface entirely and only upon his left knee, at which moment he suffered substantial personal injuries."  (SAC ¶ 35).  As a result of the fall, Plaintiff's "quadriceps muscle of his left leg was entirely and totally ripped away from his left knee joint," which caused Plaintiff severe pain and other damages.  (SAC ¶¶ 36-38, 42).

The SAC contains one Count alleging "premises liability" against each of the Defendants.  *See* SAC ¶ 47 ("At all material times hereto defendant, Padres, as lessee of,

maintainer and/or an interested party with control over the property in question, had an absolute duty to provide a reasonably safe premises for the use of invitees."); *see also* SAC ¶¶ 49 (same, against MLB and MLBP), 51 (same, against MLBPA), 53 (same, against WBC), 55 (same, against all Defendants "jointly and severally").

The SAC also contains a "claim in negligence," alleging that Defendants "owed a duty to exercise reasonable care and ordinary prudence in providing Plaintiff with a reasonably safe place to enter the property in their possession as an invitee." (SAC ¶ 57). The Defendants "breached their reasonable duty of care to provide plaintiff ... with a reasonably safe place to enter as an invitee because of one or more of the following acts or omissions: (a) [f]ailing to design and build a safe walkway/sidewalk; (b) [f]ailing to properly mark or paint the sidewalk to alert pedestrians of the significant height differential; (c) [f]ailing to provide a warning, danger sign, cone or sandwich board to alert pedestrians of significant height differential; (d) [s]etting up displays to distract pedestrians on the same property, in an area already unsafe due to significantly shifting heights; and/or, (e) [f]ailing to use a safe and reasonable method to protect all persons entering their property." (SAC ¶ 58). The breach of Defendants' duty of care caused Plaintiff to sustain injuries. (SAC ¶ 60). Plaintiff seeks damages in the amount of five million dollars. (SAC at 15).

## III.  DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to

raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

Federal Rule of Civil Procedure 12(e) provides: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994); *see also* Schwarzer, et al., Federal Civil Procedure § 9:349 ("A motion for a more definite statement attacks unintelligibility in a pleading, not simply mere lack of detail."). "[A] motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996) (citation omitted).

**B.    Contentions of the Parties**

Defendants MLBP, MLB, Padres, and MLBPA contend that Plaintiff fails to adequately allege facts adequate to show that they "are liable for actions of World Baseball Classic, Inc., which is a separate corporate entity." (Doc. # 98 at 3; *see also* Doc. # 112-2 at 5). All Defendants contend that Plaintiff improperly "name[s] multiple defendants and allege[s] that one or all of them must be liable." (Doc. # 98 at 5; *see also* Doc. # 112-2 at 6). All Defendants also contend that the SAC should be dismissed because "[a] person invited upon a premises has the duty to watch where they are going, and there is no duty to warn of an open and obvious danger." (Doc. # 98 at 5-6; *see also* Doc. # 112-2 at 6 (same)). Finally,

1  Defendants contend that if the SAC is not dismissed, Plaintiff should be ordered to provide a

2  more definite statement of his claims.

3      Plaintiff contends that the SAC sufficiently alleges facts which, if true, would establish

4  that Defendants are liable for the injuries Plaintiff suffered in his fall.  Plaintiff contends that

5  the Federal Rules of Civil Procedure "allow for plaintiffs to file a claim against more than one

6  defendant, and file even when unsure which defendant, if not all or a combination thereof, is

7  responsible for the injury."  (Doc. # 113 at 12-13 (citing Fed. R. Civ. P. 8(d)(2) & (3); Form

8  12, "Negligence When Plaintiff Does Not Know Who is Responsible," App. of Forms, Fed.

9  R. Civ. P. at 307, 2009 ed.)).

10     **C.     Analysis**

11         **1.     Negligence Count Against All Defendants**

12     "In order to establish [premises] liability on a negligence theory, a plaintiff must prove

13  duty, breach, causation and damages." *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 ( 2001)

14  (citations omitted).[1]  "'The proper test to be applied to the liability of the possessor of land is

15  whether in the management of his property he has acted as a reasonable man in view of the

16  probability of injury to others.'"  *Alcaraz v. Vece*, 14 Cal. 4th 1149, 1156 (1997) (quoting

17  *Rowland v. Christian*, 69 Cal. 2d 108, 119 (1968)).  "This requires persons to maintain land

18  in their possession and control in a reasonably safe condition."  *Id.* (quotation omitted).

19  Defendants "are liable for injuries on land they own, possess, or control....  A defendant need

20  not own, possess *and* control property in order to be held liable; control alone is sufficient."

21  *Id.* at 1162 (emphasis in original) (quotation omitted).  In *Alcaraz*, the plaintiff sued his

22  landlord, the owner of the apartment building in which he resided, for injuries sustained when

23  the plaintiff stepped into an open utility meter box located in the city-owned lawn next to the

24  sidewalk in front of the apartment building.  In affirming the court of appeal's reversal of the

25  grant of summary judgment to the property owner, the California Supreme Court held that

26  there was a triable issue of fact as to whether the property owner had exercised control over

27

28      [1]  The parties agree that Plaintiff's claims are governed by California law.  (Doc. # 98
   at 4; Doc. # 112-2 at 3; Doc. # 113 at 6).

the area in which the utility box was located even though that area was owned by the city.  *See id.* at 1170-71.  The court held that the defendant had a duty to warn the plaintiff of the danger, or protect him from that danger, if the defendant exercised control over the city-owned land.  *See id.*

"[T]hat the hazard [i]s open and obvious [does] not relieve [a] defendant of all possible duty, or breach of duty, with respect to it."  *Martinez v. Chippewa Enters., Inc.*, 121 Cal. App. 4th 1179, 1184 (2004).  "[A]lthough the obviousness of a danger may obviate the duty to warn of its existence, if it is foreseeable that the danger may cause injury despite the fact that it is obvious (e.g., when necessity requires persons to encounter it), there may be a duty to remedy the danger, and the breach of that duty may in turn form the basis for liability."  *Id.* (quotation omitted).  "Whether such a duty exist[s] depends upon a number of ... factors, such as the foreseeability of harm, defendant's advance knowledge vel non of the dangerous condition, and the burden of discharging the duty."  *Id.* at 1185 (citing *Rowland*, 69 Cal. 2d at 113).  In *Martinez*, the California Court of Appeal held that the trial court erred in granting summary judgment based on obvious danger where the plaintiff slipped on water covering the defendant landowner's driveway, despite the plaintiff's admission that "she had seen the wetness of the driveway before she walked on it."  *Id.* at 1183.  Similarly, in *Iden v. Mondrian Hotel – Los Angeles*, 2009 WL 33300 (Cal. Ct. App., Jan. 7, 2009), the California Court of Appeal held that the trial court erred in granting summary judgment to a hotel when the plaintiff tripped over luggage which had been placed in plaintiff's suite by a bellman.  *See id.*, 2009 WL 33300, at *4 ("The close question of whether the placement of the luggage posed an open and obvious danger is for the jury."); *see also Laughlin v. Save Mart Supermarkets*, 2002 WL 118376, at *3 (Cal. Ct. App., Jan. 30, 2002) (reversing grant of summary judgment for defendant landowner when plaintiff brought negligence action based on a slip and fall caused by a "depression" in defendant's parking lot, and noting that "when the size of the depression begins to stretch beyond one inch the courts have been reluctant to find that the defect is not dangerous as a matter of law"); *Alpert v. Villa Romano Homeowners Ass'n*, 81 Cal. App. 4th 1320, 1324 (2000) (holding that there was an issue of fact as to whether defendant landowner

was liable to plaintiff, who tripped and fell on "an upturned, jagged piece of sidewalk" adjacent to defendant's property); *Beauchamp v. Los Gatos Golf Course*, 273 Cal. App. 2d 20, 30-34 (1969) (reversing trial court's grant of a nonsuit to defendant in negligence action brought by an experienced golfer who slipped and fell while wearing spiked golf shoes on a level, almost-new cement walk, which had no defects or foreign substances on it).

The SAC adequately alleges that the Defendants jointly controlled the Campus Parking Lot on the date Plaintiff fell and sustained his injuries. (SAC ¶ 20 (alleging that the MLB Defendants and the MLBPA "assumed the operation, management, maintenance and control of PETCO, and the surrounding parking lots, for the performance of the World Baseball Classic Championship Finals on March 20, 2006")).[2] This alleged control of the parking lot imposed a duty on the part of the Defendants "in the management of [the] property ... [to] act[] as a reasonable man in view of the probability of injury to others." *Alcaraz*, 14 Cal. 4th at 1156 (quotation omitted).

As alleged in the SAC, the unmarked "'curb' or 'sidewalk' [which] fell off some eight to ten inches" (SAC ¶ 34) is sufficient to constitute a "hazard," as defined in the relevant premises-liability negligence cases set forth above. *See also Woodard v. Bank of Am. Nat'l Trust & Savs. Ass'n*, 130 Cal. App. 2d 849, 852 (1955) (affirming trial court finding of negligence on the part of defendant landowner, when plaintiff "stumbled and fell over a concrete curbing between a sidewalk ... and an adjoining parking lot") ("The trial court found ... that the curb as constructed and maintained constituted a hazard to invitees. It also found that [plaintiff] was not contributorily negligent. These determinations lie within the province of the finder of fact...."). Even if a trier of fact found that "the hazard was open and obvious, [it] d[oes] not relieve defendant[s] of all possible duty, or breach of duty, with respect to it." *Martinez*, 121 Cal. App. 4th at 1184. Moreover, the SAC alleges that Defendants installed

---

[2] In the Opposition to the MLBPA's Motion to Dismiss, Plaintiff states that based upon the corporate disclosures, Plaintiff "can no longer in good faith allege that MLBPA has any parental control over [WBC]. Any allegations of alter ego against MLBPA, while made in good faith, should be stricken from the Second Amended Complaint." (Doc. # 114 at 5). However, there is no indication in Plaintiff's brief that Plaintiff has withdrawn the allegation that the MLBPA controlled the parking lots surrounding PETCO. *Compare* SAC ¶ 13 (alter ego allegation) *with* SAC ¶ 20 (control allegation).

"attractions" on the Campus Parking Lot which "were naturally set up to visually attract pedestrians and draw them near; obviously this distracted these passersby from looking down to alert themselves of any danger lurking underneath their feet." (SAC ¶¶ 31, 33). The "reasonable anticipation" that someone such as Plaintiff would be distracted by the attractions "increases the necessity for [Defendants] to exercise care." *Iden*, 2009 WL 33300, at *4 ("A customer shopping in a store may focus her attention on the wares on display and, more or less absorbed by her planned transactions, may not watch the floor. The reasonable anticipation of such behavior increases the necessity for a proprietor to exercise care to keep its floor space and customer aisles clear, safe and fit for its customers' purposes."). The SAC adequately alleges that each Defendant breached its duty to Plaintiff, which caused Plaintiff to suffer injury. (SAC ¶¶ 58-60).

The Court finds that the SAC states a negligence claim against each Defendant. The Court also finds that the SAC is not "so vague or ambiguous that [Defendants] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Therefore, as to the negligence claim, Count VI of the SAC, the Motions to Dismiss are denied.

### 2.    Premises Liability Counts Alleging an "Absolute Duty"

In addition to the "Claim in Negligence" (Count VI), the SAC contains Counts alleging "premises liability" against each of the Defendants. (SAC ¶¶ 46-55, Counts I-V). These "premises liability" Counts appear to the same, or similar to the negligence Count against all Defendants, except that the "premises liability" Counts contain an allegation that each Defendant "had an absolute duty to provide a reasonably safe premises for the use of invitees." (SAC ¶¶ 47, 49, 51, 53, 55). Plaintiff has pointed to no California premises liability law which imposes an "absolute duty" on owners or occupiers of land, or which differs from the negligence principles discussed above. *Cf. Ursino v. Big Boy Rest.*, 192 Cal. App. 3d 394, 398 (1987) ("[P]ersons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition. The duty of care imposed on a property owner, even one with actual notice, does not require the repair of minor defects."). The "premises liability" Counts, which allege an "absolute duty," are dismissed.

1

**IV.     CONCLUSION**

2

IT IS HEREBY ORDERED that the Motions to Dismiss are **GRANTED IN PART** and

3

**DENIED IN PART**.  (Doc. # 98 & 112).  As to the negligence claim, Count IV of the Second

4

Amended Complaint, the Motions to Dismiss are **DENIED**.  The remaining Counts of the

5

Second Amended Complaint are **DISMISSED**.

6

DATED:  September 8, 2009

7

**WILLIAM Q. HAYES**

8

United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09cv982-WQH-CAB