1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD J. BAKER, | CASE NO. 3:09-CV-00982 |
| Plaintiff, | |
| vs. | **ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER** |
| MAJOR LEAGUE BASEBALL PROPERTIES, INC., et al., | |
| Defendants, | |
| and | |
| RELATED CLAIMS. | |

On May 8, 2012, the parties to this action filed a joint motion for entry of a stipulated protective order regarding the fourth deposition setting of Plaintiff.   (Doc. No. 244.) Defendants/Third Party Defendants Buzztone, Inc.; HOK Group, Inc.; New Era Cap Co., Inc.; Ballpark Village LLC; and Ace Parking Management, Inc., by and through their respective attorneys of record herein, (collectively, the "Third Party Defendants") wish to redepose the Plaintiff on additional matters, as detailed in Exhibit A.   Plaintiff has been deposed three previous times for a total of eight to nine hours of total testimony and agrees to an additional

1

three hours of deposition testimony in a fourth setting, pursuant to the following particulars to this Protective Order.  Plaintiff Baker and the Third Party Defendants have stipulated to the terms of the Stipulated Protective Order.

It further appearing to the Court that all the Parties hereto are desirous of conducting the deposition in accordance with this Protective Order to promote the discovery in this case;

It is hereby ORDERED that the Protective Order set forth below be granted.

## PROTECTIVE ORDER

1.    "This Litigation" means the case of *Baker v. Major League Baseball Properties, Inc.,et al.,* Case No. 3:09-cv-00982-WQH(BGS), filed in the United States District Court, Southern District of California, and any related cross-actions.

2.    The parties to this Protective Order and their counsel agree to comply with the Terms of this Protective Order.

3.    Plaintiff, Capt Baker will sit for a fourth and final deposition so that the Third Party Defendants may obtain testimony from him on the additional matters that are sought in the interest of discovery, and as listed in Exhibit A to this Order.

4.    The Plaintiff and the Third Party Defendants have stipulated to the proposed terms and conditions of the deposition of Richard Baker to occur on a date in May, 2012 in San Diego for the period of three hours.

5.  The Third Party Defendants will pay for the cost of Capt. Baker's travel (and two days of hotel accommodations).

6.    On the day of the deposition, if the deposition examination is nearing the three-hour mark, the parties will meet and confer at that time regarding additional examination time with the

defense (Third Party Defendants) providing an offer of proof of the examination to be conducted and the estimated time required to further conduct it.

7.   Without a separate Court order, this Protective Order and the Parties' stipulation does not change, amend, or circumvent any court rule or local rule.

8.   The Court may modify the terms and conditions of the Order for good cause, or in the interest of justice, or on its own order at any time in these proceedings.

**IT IS SO ORDERED**.

DATED: May 14, 2012

_____
BERNARD G. SKOMAL
United States Magistrate Judge

3

**EXHIBIT A**

**A.  LIABILITY**

1.  Clarification regarding the access point(s) to enter the parking lot and path of travel throughout the parking lot.

2.  Signage regarding the exhibit/events.

3.  Any ticket payment to get into the parking lot/exhibits.

4.  Description of the location of any vehicles parked inside the lot.

5.  Barrier/security/other in place to dis/allow vehicular traffic to enter the lot.

6.  Description of any vehicular traffic attempting to enter the parking lot.

7.  Regulation, if any, of the amount of pedestrian traffic and the way it flowed throughout the exhibition area.

8.  Description of any type of proof of payment to enter the lot (e.g. a handstamp, a 'bracelet,' etc.).

9.  Clarification of the boundaries of the VIP party area in the north area of the lot versus the general public area of the lot and the activities occurring therein.

10.  Observations of what services security was performing (and the basis of his information that it was the same security services as provided inside the stadium).

11.  Whether he had anything in his arms/hands at the time of the incident.

12.  Eyewear he normally wears and was wearing at the time of the incident.

13.  Anything he had on his person (cell phone, fanny pack).

14.  Activity he engaged in the week he stayed in San Diego after the incident.

15.  Claims and allegations he is making specifically as to each newly-named defendant and cross-defendant.

///

4

**B.  DAMAGES:**

**1.  Orthopedic**

    a.        His current condition and treatment for his knee and back.

    b.        His current activities of daily living and attempts to do activities such as gardening, golf, volleyball, football, body surfing, walking and softball.

    c.        His planned future treatment.

**2.  Psychiatric/Psychological**

    a.        His commencement of treatment with a psychologist (versus a psychiatrist).

    b.        His treatment provider prescribing Effexor XR (as opposed to another type of anti-depressant).

    c.        His decision to elect to take a generic form of Effexor ER (as opposed to another type of anti-depressant).

    d.        His discussions with any treatment provider (general practitioner, psychologist, psychiatrist) regarding whether he can (a) transfer to a permissible FAA anti-depressant and go off generic Effexor XR; and (b) if not, whether he could petition to have generic (or brand) Effexor XR to be included among FAA-permissible antidepressant medications.

    e.        His discussions with any treatment provider regarding his current depression medication and dosage given that he has been reported as being presently clinically depressed.

    f.        The number of FAA tests he has reapplied for, if any, since March 2011.

    g.        His presenting and current psychological complaint(s);

        i.        The progression of his depression (and any other disorder/symptom diagnosed, including suicidal ideation);

        ii.        The diagnosis;

        iii.        The modality and frequency of the past and current treatment (including non-clinical treatment such as the presence of a support system, sleep hygiene, diet and exercise);

5

     iv.   Apportionment of the treatment related to the incident and alleged inability to fly due to back pain and/or ingestion of nonFAA-approved depression medication; and

     v.   The prognosis.

**3. Vocational Rehabilitation**

a.     Efforts and results of finding other employment and future plans in relation thereto.

b.     Efforts and results regarding vocational rehabilitation and future plans in relation thereto.

c.     If he returns to flying, what retraining would he need to complete (e.g., retraining on the aircraft since it has been more than 90 days).

6